UNITED STATES DISTRICT COURT IN AND FOR THE
SOUTHERN DISTRICT OF FLORIDA
**19-62356-CV-RUIZ/SELTZER**

DAWN GORDON,

       Plaintiff,

vs.

CASE NO.

JURY TRIAL DEMANDED

CORNERSTONE RECOVERY CENTER,

       Defendant,

_____/

FILED by **LH** D.C.

Sep 23, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – FT. PIERCE

## COMPLAINT

COMES NOW, Plaintiff, DAWN GORDON, and sues CORNERSTONE RECOVERY CENTER, Defendant, herein and alleges as follows:

1. The Plaintiff, DAWN GORDON ("GORDON"), brings this action against CORNERSTONE RECOVERY CENTER ("CORNERSTONE') for violations of the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101 TO 12213 (collectively, the "ADA").

2. Defendant hired GORDON on September 11th, 2012, as a primary therapist and court liason. During her tenure at CORNERSTONE, GORDON always had outstanding job performance reviews, was never disciplined, and was routinely promoted in accordance with the normal business practices of CORNERSTONE. Despite GORDON'S many achievements, Defendant discriminated against and fired/terminated in retalliation for her perceived disability due to personal stressors in

her life for which she was seeking treatment. As a result, GORDON has suffered significant emotional and monetary damages.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the ADA.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and there is no other district in which the action may otherwise be brought.

5. On or about April 24th, 2018, GORDON timely filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). SEE Exhibit A

6. On or about June 25th, 2019, the EEOC issued GORDON a Notice of Right to Sue. This Compaint has been filed within 90 days of the receipt of that notice. GORDON has fully complied with all prerequisites to jurisdiction in this Court under the ADA. SEE Exhibit B

7. GORDON resides in West Palm Beach, Florida. GORDON is a citizen of Florida.

8. GORDON was an employee, as defined by the ADA. GORDON was a primary therapist at CORNERSTONE. GORDON worked there for over five (5) years. She received wages and all state and federal taxes were withheld. She also received a benefits package, which included health insurance.

9. CORNERSTONE is a Florida corporation with its headquarters and principal place of business located at 3223 NW 10th Terrace, Suite 610, Fort Lauderdale, Florida in Broward County, Florida. CORNERSTONE is an employer as defined by the ADA. CORNERSTONE is a recovery center for substance abuse and mental health

disorders. CORNERSTONE, upon information and belief, has between twenty (20) and forty (40) employees.

10. GORDON began working for Defendant CORNERSTONE on September 11th, 2012 as a primary therapist in the substance abuse area.

11. During her tenure, GORDON's work performance met or exceeded Defendant's legitimate expectations. GORDON's reviews of her performance were consistently excellent. GORDON was recognized as a top performer and had never received any disciplinary actions. GORDON maintained a full case load or ten (10) to (15) clients. She completed all necessary paperwork and her documentation was always completed on time. Eventually, the position of court liason was added to her duties without and decrease in her duties as a primary therapist. There was no additional compensation for these additional job duties. Sometime in early 2015, she was "promoted" to a primary therapist in the mental health unit and still maintained her duties as court liason. There were still some clients whose cases she handled in the substance abuse unit. Shortly after that, she was thrust into the position of lead therapist in the mental health unit, carrying a caseload of approximately twenty-five (25) clients.

12. CORNERSTONE clearly recognized GORDON'S accomplishments by extending her responsibilites and adding to her job duties. GORDON'S compensation was not increased until after her college graduation in December of 2016, however the raise was not received until August 2017.

13. GORDON, having been diagnosed with depression and anxiety on or about April of 2017, and having been diagnosed with cancer in May 2014, is a qualified individual under the Americans with Disabilities Act of 1990, as amended. As a result of

GORDON's disabilities, major life activities, such as exercise and fellowship meeting attendance, and interpersonal relationships suffered.

14. CORNERSTONE was aware of GORDON's cancer diagnosis, as well as her diagnosis of depression and anxiety. The clinical director of CORNERSTONE recommended the psychiatrist who made the diagnosis.

15. Although her work was not affected, CORNERSTONE perceived GORDON to have mental health "issues" which would interfere with her ability to perform her job duties, despite the fact that her reviews had always been excellent even after her diagnoses.

16. CORNERSTONE effectively terminated GORDON's employement without any attempt to accommodate her actual or perceived disability, but rather forcerd her to take a "furlough" to work on these "issues" they believed would impair her ability to work. At no point in time was any discussion had regarding a revision of job duties or responsibilities in order to reduce work-related stress. GORDON was simply told by CORNERSTONE that she was being placed on a furlough and was to return all CORNERSTONE property immediately to the offices.

17. Despite CORNERSTONE's knowledge of GORDON's cancer, depression, and anxiety, GORDON was not terminated until such time as she began to challenge the ethical implications and legality of common business practices at CORNERSTONE.

### COUNT I: Failure to Provide a Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq.

18. GORDON repeats and realleges paragraphs 1 through 17 hereof, as if fully set forth herein.

19. GORDON, was diagnosed with depression and anxiety on or about April of 2017, and diagnosed with cancer in May 2014, making her a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111 of the ADA. GORDON could perform the essential functions of her position without a reasonable accommodation.

20. Shortly after each of the aforementioned diagnoses, GORDON notified CORNERSTONE of the diagnosis.

21. At no time prior to her mandated furlough/termination was there any discussion regarding the need for accommodations.

22. CORNERSTONE advised GORDON she was madated to take a furlogh because they did not believe she could perform her job duties due to her perceived disability.

23. GORDON suffered damages as a result of CORNERSTONE's unlawful discriminatory actions, including emotional distress, past and future lost wages, and benefits and the cost of bringing this action.

24. CORNERSTONE intentionally violated GORDON's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

### COUNT II: Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq.

25. GORDON repeats and realleges paragraphs 1 through 23 hereof, as if fully set forth herein.

26. GORDON was qualified for her position when CORNERSTONE fired her.

27. In late 2017, GORDON began to challenge the ethical implications of and legality of common business practices of CORNERSTONE. For example, severe persistent mental health clients that were not able to be effectively managed at the level of care offered at CORNERSTONE were nonetheless admitted for treatment in exchange for

financial compensation. Additionally, mental health clients with no history of substance abuse, and therefore no medical basis for drug screening existed, were nonetheless given drug test unrinalysis screening three times a week and claims for the urinalysis tests were submitted to insurance. The lab to which the tests were submitted was owned by at least one of the same owners of CORNERSTONE.

28. Shortly after questioning these practices, CORNERSTONE fabricated a concern that GORDON was unable to perform her job duties due to her disabilities and effectively terminated her by mandating a furlough.

29. CORNERSTONE's alleged reason for terminating GORDON is pretextual and baseless. GORDON was fired because she complained of the illegal practices of the primary operators at CORNERSTONE.

30. GORDON suffered damages as a result of CORNERSTONE's unlawful discriminatory actions, including emotional distress, past and future lost wages, and benefits and the cost of bringing this action.

31. CORNERSTONE intentionally violated GORDON's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

**PRAYER FOR RELIEF:**

**WHEREFORE,** Plaintiff respectfully requests judgement as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for her past and future loss of wages, benefits, plus interest;

C. Award Plaintiff comepensatory and punitive damages;

D. Award Plaintiff all costs and reasonable attorney's fees incurred in connection with this action; and

E. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims properly triable by a jury.

Respectfully submitted,

Dawn Gordon, pro se
517R Greynolds Cir
Lantana, FL 33462
(772) 773-8066
Dg.serenity@att.net